IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SMITH, | : | Civil No. 1:25-CV-01841 |
| Plaintiff, | : | |
| v. | : | |
| FEDERAL BUREAU OF PRISONS, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Plaintiff Robert Smith's complaint seeking injunctive relief from the Federal Bureau of Prisons ("BOP"). (Doc. 1.) Also pending are Plaintiff's motions to proceed *in forma pauperis* and motion for appointment of counsel. (Docs. 2, 4.) The court will grant Plaintiff's motion to proceed *in forma pauperis*, screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), dismiss the complaint with prejudice, and deny Plaintiff's motion for appointment of counsel.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint in this court on October 1, 2025. (Doc. 1.) The complaint alleges that an unspecified event took place at the Federal Detention Center in Philadelphia, Pennsylvania on May 10, 2023 and Plaintiff was placed in administrative custody. (Doc. 1.) He was then transferred to the United States Prison Canaan ("USP-Canaan") in Waymart, Pennsylvania.

1

(*Id.*)  Plaintiff alleges that since his arrival at USP-Canaan he continues to be in administrative custody.  (*Id.*)  He alleges that the continued administrative custody at USP-Canaan constitutes cruel and unusual punishment and violates his Eighth Amendment rights.  (*Id.*)  When asked to identify the nature of the complaint, Plaintiff does not select the given options of 42 U.S.C. § 1983, *Bivens*, or the Federal Tort Claims Act.  Instead, he creates his own category: "preliminary injunction, Federal Rule Civil Procedure Rule 65(a)."  (*Id.*)

Along with the complaint, Plaintiff filed a motion to proceed *in forma pauperis* and a motion for appointment of counsel.  (Docs. 2, 4.)

The court will grant the motion to proceed *in forma pauperis*, construe the complaint as raising an Eighth Amendment claim under *Bivens*, and screen the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).

### Standard

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court "shall dismiss" an in forma pauperis case "at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted[.]"  The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915 is identical to the legal standard used when ruling on Fed. R. Civ. P. 12(b)(6) motions to dismiss.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(6), the court must accept all well pleaded allegations as true and construe all reasonable inferences in favor of the nonmoving party. *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). The pleadings of self-represented plaintiffs are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d. Cir. 2011). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

## DISCUSSION

**A. The Court Will Construe the Complaint as a *Bivens* Action.**

First, the court highlights that it is construing the complaint strictly as a *Bivens* claim raising an Eighth Amendment violation based on Plaintiff's continued administrative custody at USP-Canaan. This court is not making any determination regarding the constitutionality of how the Federal Detention Center in Philadelphia treated Plaintiff in relation to the May 10, 2023 incident. Nor, is it addressing any procedural due process claims associated with the investigation and misconduct reports associated with the May 10, 2023 incident, as these are not articulated in the complaint.

The court acknowledges that Plaintiff is seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) and did not identify the complaint as raising claims under *Bivens*. (Doc. 1.) While Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions, motions for such orders are judged against exacting legal standards. Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F. 2d 440, 443 (3d Cir. 1982). Rather, it "is an 'extraordinary remedy.'" *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). The Third Circuit has found that "there must be a relationship between the injury claimed in the

party's motion [for injunctive relief] and the conduct asserted in the complaint." *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (internal quotation marks omitted) (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Furthermore, it is inappropriate to grant a motion for a preliminary injunction when the relief requested in the motion is unrelated to the allegations in the complaint. *Id*. at 838; *see also Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018) (holding that the District Court correctly denied a "requested injunction because it involved allegations unrelated to the complaint"). Here, by seeking only a preliminary injunction based on an alleged Eighth Amendment violation, Plaintiff is putting the cart before the proverbial horse (i.e. the request for a preliminary injunction before a complaint). Therefore, the court remedies this procedural error by construing the complaint as a *Bivens* action raising an Eighth Amendment claim premised on the continued administrative custody while housed at USP-Caanan and the relief sought in the complaint as injunctive relief.

Furthermore, by viewing the complaint in these terms, the court can find that it is the proper venue for the complaint. Venue is proper in this district because the alleged acts and omissions giving rise to the Eighth Amendment claim occurred at USP-Canaan in Wayne County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

Therefore, the court will deem the complaint as being filed under *Bivens* and will screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. The Complaint Will be Dismissed with Prejudice.**

Plaintiff is raising an Eighth Amendment cruel and unusual punishment claim premised on his continued administrative custody at USP-Caanan. (Doc. 1.)

"*Bivens* is the short-hand name given to causes of action against federal officials for alleged constitutional violations." *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018). In the case giving the doctrine its name, the Supreme Court held there is a cause of action for damages when a federal agent, acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). The Supreme Court subsequently extended *Bivens* to allow claims under the Fifth Amendment's due process clause for gender discrimination in the employment context, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and under the Eighth Amendment's prohibition of cruel and unusual punishment clause in the prison medical care context, *Carlson v. Green*, 446 U.S. 14, 23–25 (1980). The Supreme Court also established a standard to determine whether a *Bivens* cause of action should be further recognized in a new context. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

The Supreme Court sets forth a two-part test for determining whether a prospective *Bivens* claim may proceed. First, courts must ascertain whether the case presents a "new context." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). If the case differs "in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new." *Abbasi*, 582 U.S. at 139. And the meaning of "new context" is "broad." *See Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *See Abbasi*, 582 U.S. at 139–40. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Abbasi*, 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *See Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 102) (internal quotation marks omitted)

The Supreme Court's decision in *Egbert* reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *See Egbert*, 596 U.S. at 483, 491 (quoting

*Abbasi*, 582 U.S. at 136; *Hernandez*, 589 U.S. at 101-03). *Egbert* clarified that the two-step process laid out in *Abbasi* "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." See *Egbert*, 596 U.S. at 492. In other words: if there is "any rational reason (even one) to think that Congress is better suited" to determine the propriety of a cause of action, then a *Bivens* action cannot proceed. See *Egbert*, 596 U.S. at 496. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even potentially yes, the plaintiff cannot recover under *Bivens*. See *Egbert*, 596 U.S. at 496 (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)).

The court proceeds with *Abbasi*'s two-step analysis. Plaintiff's cruel and unusual punishment claims fall under the Eighth Amendment. Of the three cases in which the Supreme Court has recognized *Bivens* claims, only *Carlson*—involving an Eighth Amendment claim—is relevant. In *Carlson*, a prisoner's estate filed suit alleging that prison officials had been fully aware of the prisoner's serious "chronic asthmatic condition" as well as the "gross inadequacy" of medical facilities and prison staff. See *Carlson*, 446 U.S. at 16 n.1. The estate alleged officials failed to provide the prisoner "competent medical attention for some eight hours after he had an asthmatic attack," including an inordinate delay of his

transfer to an outside hospital, all of which led to the prisoner's death. *See Carlson*, 446 U.S. at 16 n.1.

Here, Plaintiff's Eighth Amendment claim is markedly different from the Eighth Amendment inadequate medical care claim recognized in *Carlson*. While the claims arise under the same constitutional amendment, the Supreme Court has made clear that a common constitutional basis is not enough to link a new *Bivens* theory to an existing *Bivens* context. *See Hernandez*, 589 U.S. at 103 (indicating courts must "look beyond the constitutional provisions invoked"). Plaintiff's Eighth Amendment claim does not involve a medical emergency, as did *Carlson*, but rather focuses on an inmate's custody status following an unspecified event at a remote facility. This difference is significant. Specifically, the administrative and injunctive relief would have a completely different application to Plaintiff's claims than the claims in *Carlson*, where the failure to properly address a medical emergency proved fatal. *See Egbert*, 142 S. Ct. at 1803 (explaining that "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider'" (quoting *Ziglar*, 137 S. Ct. at 1864)). Thus, the Eighth Amendment claim brought by Plaintiff differs meaningfully from *Carlson* and constitutes a new context.

Because the court concludes that Plaintiff's Eighth Amendment claim presents a new context, the court must turn to the second *Abbasi* step and

determine whether any special factors are present. In this context, the court asks whether "there are any special factors that counsel hesitation" in extending *Bivens*. *See Hernandez*, 589 U.S. at 102 (internal quotation marks and alterations omitted) (quoting *Abbasi*, 582 U.S. at 136). Although courts may consider various special factors, *see Bistrian*, 912 F.3d at 90, two "are 'particularly weighty': availability of an alternative remedial structure and separation-of-powers concerns," *see Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020) (quoting *Bistrian*, 912 F.3d at 90).

In *Egbert*, the Supreme Court reiterated its prior emphasis on the availability of alternative remedies, *see Egbert*, 596 U.S. at 497–98, further extending the Court's longstanding view that "when alternative methods of relief are available, a *Bivens* remedy usually is not," *see Abbasi*, (citing *Bush v. Lucas*, 462 U.S. 367, 386–88 (1983); *Schweiker v. Chilicky*, 487 U.S. 412, 425–26 (1988); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73–74 (2001); *Minneci v. Pollard*, 565 U.S. 118, 125–26 (2012)). The BOP has an Inmate Discipline Program that addresses how incident reports regarding violations of prisoner rules by inmates are to be handled. 28 C.F.R. §§ 541.1–541.8. This includes the rights of an inmate to appeal unfavorable decisions through the administrative remedy program. 28 C.F.R. § 541.7(i). The Supreme Court has held that "administrative review mechanisms" can provide "meaningful redress"—even if they do not "fully remedy the constitutional violation." *Malesko*, 534 U.S. at 68.

Plaintiff alleges that because there is an ongoing criminal investigation, this administrative process has been paused. (Doc. 1-1.) *Egbert* makes clear that the question for this court is not whether a *Bivens* damages remedy would be more effective, nor even whether the existing remedy is sufficient. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. The existence of the BOP's administrative remedy process "independently foreclose[s]" a *Bivens* remedy in this new context. *Egbert*, 596 U.S. at 497.

Assuming *arguendo* the BOP's administrative remedy program does not constitute an alternative remedy, the court must still consider whether there are other factors—such as separation-of-powers concerns—that weigh against creating a *Bivens* remedy to fill the void. *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *See Abbasi*, 582 U.S. at 135. Thus, any special-factors assessment must seek to discern whether Congress would want the federal judiciary to impose "a new substantive legal liability" in a particular case. *Abbasi*, 582 U.S. at 136. In *Egbert*, the Supreme Court stressed that "even one" reason to believe the federal legislature is better equipped to provide a damages remedy means a *Bivens* action cannot proceed. *See Egbert*, 596 U.S. at 496. Congress's

silence, particularly when it has already legislated in a given sphere, can be "telling" in this analysis. *See Abbasi*, 582 U.S. at 144. The Supreme Court has suggested that Congress's omission of a "standalone damages remedy against federal jailers" from the PLRA may imply a congressional intent to limit *Carlson's* damages remedy to its context. *See Abbasi*, 582 U.S. at 149. The Third Circuit Court of Appeals has disagreed and opined that Congress's silence in the PLRA does not necessarily signal legislative intent that "a *Bivens* cause of action should not exist at all." *See Bistrian*, 912 F.3d at 93; *see also Mack*, 968 F.3d at 323-24 (quoting *Bistrian*, 912 F.3d at 93). However, the Third Circuit has also observed, "congressional silence on prison litigation can still counsel hesitation in some contexts," particularly when—as here—the alleged mistreatment is "different ... than that alleged in [*Davis* and] *Carlson*." *Mammana*, 856 F. App'x at 415.

    The claim before the court warrants hesitation. The Supreme Court has severely limited the extension of *Bivens* to new contexts. Based on the foregoing, the court concludes, that there is no relief for an Eighth Amendment cruel and unusual punishment claim in this context as the Inmate Discipline Program provides a path for the redress of Plaintiff's claims and Congress' silence under the PLRA implies an intent to limit damages. As such, the complaint will be dismissed with prejudice.

### C. The Court Will Deny the Motion for Appointment of Counsel.

Plaintiff also filed a pending motion to appoint counsel. (Doc. 2.) Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019). The appointment of counsel is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances after a finding that the plaintiff's case has arguable merit in fact and law. *Tabron*, 6 F.3d at 155. If the court finds that the plaintiff has crossed this threshold inquiry, the court should consider the following factors in deciding whether to request a lawyer to represent an indigent plaintiff:

(1)  the plaintiff's ability to present his or her own case;

(2)  the complexity of the legal issues;

(3)  the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;

(4)  the plaintiff's ability to retain counsel on his or her own behalf;

(5)  the extent to which a case is likely to turn on credibility determinations, and;

(6)  whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57.  This list of factors is non-exhaustive, and no single factor is determinative.  *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)).  Instead, these factors serve as guideposts for the district courts to ensure that the precious commodity of volunteer attorney time is not "wasted on frivolous cases."  (*Id.*)

Here, the complaint will be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief may be granted.  Therefore, Plaintiff cannot establish that his case has arguable merit in fact and law, and his motion for appointment of counsel must be denied.

## CONCLUSION

For the reasons set forth above, the court will grant Plaintiff's motion to proceed *in forma pauperis*, construe the complaint as being brought under *Bivens*, and dismiss the complaint with prejudice.  The motion for appointment of counsel will also be denied.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: December 29, 2025